Booz, Appellant, *v.* Reed.

Argued November 17, 1959. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and MCBRIDE, JJ.

*Robert B. Ely, III,* with him *Harold Scott Baile.* for appellant.

*Basil C. Clare,* for appellee.

174

OPINION BY MR. CHIEF JUSTICE JONES, January 18, 1960:

This action in mandamus was instituted by the plaintiff in an effort to compel the defendant prothonotary of Delaware County to accept for filing in the court of common pleas of that county, without prior court leave sought or obtained as required by the Act of May 17, 1956, P. L. 1626, No. 541, 42 PS §913a, the plaintiff's transcript on an appeal from a judgment entered against him by a justice of the peace in the sum of $98.12 as damages inflicted by him in an automobile accident.*

In an effort to appeal the judgment entered by the justice of the peace, Booz pursued the procedure prescribed by the Act of March 20, 1810, P. L. 208, 5 Sm. L. 161, §4, 42 PS §923, by presenting the transcript of the proceedings before the justice of the peace to the prothonotary of the court of common pleas of Delaware County who refused to accept the transcript because of the plaintiff's failure to apply to the court, as required by the Act of 1956, for leave to appeal the judgment. Upon the prothonotary's refusal to accept the transcript, Booz, without having sought leave of court to appeal, filed his complaint in the instant action of mandamus in the court of common pleas against the prothonotary for the purpose of compelling him to accept the appeal without leave of court. The prothonotary filed preliminary objections to the complaint

---

* The Act of 1956, supra, provides that, "In every action of trespass before a magistrate, alderman or justice of the peace, in which a right of appeal from the decision thereof to the court of common pleas now exists, the right of appeal shall hereafter apply only where the judgment given by the magistrate, alderman or justice of the peace shall exceed the amount of one hundred dollars ($100), excluding costs. In case the amount of the judgment does not exceed one hundred dollars ($100), the judgment of the magistrate, alderman or justice of the peace shall be final except by petition to the court of common pleas for special allowance."

in mandamus setting forth that Booz had not complied with the terms of the Act of 1956 in attempting to appeal the judgment entered against him by the justice of the peace for a sum less than $100. The court dismissed the prothonotary's preliminary objections in an opinion which held that the Act of 1956 is unconstitutional. See *Booz v. Reed,* 13 Pa. D. & C. 2d 283 (1957). The prothonotary then filed his answer to the complaint in which he admitted his refusal to accept the transcript and averred, as justification for his action, Booz' failure to comply with the requirements of the Act of 1956. Booz moved for judgment on the pleadings. The court entered judgment on the pleadings for the defendant prothonotary in an opinion holding that the Act of 1956 is constitutional. From the entry of the judgment against him, the complainant has appealed to this court.

The appellant bases his action on the ground that the Act of 1956 is unconstitutional since Article I, Section 6, of the Pennsylvania Constitution guarantees that "Trial by jury shall be as heretofore and the right thereof remain inviolate" and, at the time of the adoption of our present Constitution in 1874, the losing party had the right to appeal to the court of common pleas of the local county from any judgment entered against him by a justice of the peace which exceeded $20 in amount, and thereby secure a jury trial. Act of March 20, 1810, P. L. 208, 5 Sm. L. 161, §4, 42 PS §662.

The barrier to the appellant's raising the question of the constitutionality of the Act of 1956 presently is his inability to show that he has been or will be denied a right of trial by jury on his appeal from the judgment entered against him by the justice of the peace; *non constat* that the court upon his application for leave to appeal will deny him that right. And no one has standing to question the constitutionality of

an Act of Assembly unless and until he can show that his constitutional rights have been or will be violated by the Act's enforcement.

"As stated in Knowles's Estate, 295 Pa. 571, 585, 145 A. 797, 'In deciding constitutional attacks upon acts of assembly, the courts do not heed abstract propositions; they deal with actual conditions alone, which must not only affect the one complaining of the alleged unconstitutionality but also must affect him by reason of the particular defect that it is claimed makes the act unconstitutional.' The foregoing principle is equally applicable to attacks upon ordinances. In Knup v. Philadelphia, [386 Pa. 350, 126 A. 2d 399], we recognized that ' . . . a court will take jurisdiction [of a question of unconstitutionality] only in a case in which a challenged statute, ordinance, or rule of court has been actually applied to a litigant; it does not undertake to decide academically the unconstitutionality or other alleged invalidity of legislation until it is brought into operation so as to impinge upon the rights of some person or persons.' ": *Home Life Insurance Company of America v. Board of Adjustment*, 393 Pa. 447, 453, 143 A. 2d 21.

All that the appellant has, or presently can have, upon which to base his contention of a deprivation of his right to a jury trial is his assumption that, after he has applied to the court, as required by the Act of 1956, he may be refused leave to appeal and thus be deprived of his indicated constitutional right. Obviously, he can neither aver nor prove that denial of leave so to appeal will be the result of a petition to the court therefor. Until he can so establish, he is not harmed and is, therefore, without standing to assert the unconstitutionality of the Act of 1956.

Mandamus to compel a governmental ministerial officer to act in disobedience of the requirements of a relevant statute, before there has been a judicial pro-

nouncement of the Act's invalidity, is not the normal procedure for testing the constitutionality of a statute. Of course, where a party's constitutional right, which he seeks to vindicate by mandamus, would be lost to him if he followed the procedure prescribed by an assailed statute, it is appropriate that the validity of the statute be determined in a mandamus proceeding. Such was the exceptional situation in each of the two cases upon which the present appellant relies, viz., *Pennsylvania Company for Insurance on Lives, etc. v. Scott, Prothonotary,* 329 Pa. 534, 198 A. 115 (1938), and *Pennsylvania Company for Insurance on Lives, etc. v. Scott, Prothonotary,* 346 Pa. 13, 29 A. 2d 328 (1942).

The first of the two *Scott* cases, above cited, arose under the Deficiency Judgment Act of July 2, 1937, P. L. 2751, 21 PS §821a et seq. In that case, the plaintiff petitioned the court of common pleas for a writ of mandamus to compel the prothonotary to issue a writ of levari facias directed to the sheriff to proceed with execution on a judgment in favor of the plaintiff upon a debt secured by a mortgage. The prothonotary defended his refusal so to act on the ground that the plaintiff had failed to file a statement with the court releasing the obligors from personal liability for the secured debt or to have the fair market value of the mortgaged property fixed by the court upon petition by the judgment creditor as required by the Act of 1937, supra. The court refused a mandamus and on appeal, this court held the Act of 1937, supra, to be unconstitutional. Plainly enough, mandamus was there recognized as the appropriate form of action for testing the statute's constitutionality and, very properly so, in the circumstances. If compliance with the procedure prescribed by the challenged statute were required before its validity was established, the plaintiff would thereby be forced to sacrifice in advance the very rights of property of which, as he timely com-

plained, it was unconstitutional for the Act to deprive him.

In the second *Scott* case, supra, which arose under the Deficiency Judgment Act of July 16, 1941, P. L. 400, Section 6, 12 PS §2621.6, the same procedure, as in the first *Scott* case, was followed in order to test in limine the validity of the Act of 1941, supra. On this occasion, however, the Act of 1941 (which had obviated the defects in the Act of 1937) was held to be constitutional. But, here again, mandamus was the appropriate form of action for questioning the validity of the Act of 1941 since compliance with the challenged statute, before its validity had been judicially determined, would have required the plaintiff to surrender the rights which, he alleged, could not constitutionally be taken from him by the legislative enactment.

In the case at bar, it is not compliance with the prescribed statutory procedure that might deprive the plaintiff of a constitutional right, as in the *Scott* cases, but only the possible action of a judge after the statutory procedure has been followed. True enough, as compared with the procedure, prior to the Act of 1956, for appealing to a court of common pleas from a judgment entered by a justice of the peace, compliance with the Act of 1956 may consume a little more time and require a relatively trifling additional expense. But, as we said in the *Smith Case*, 381 Pa. 223, 231, 112 A. 2d 625 (1955) : "All that is required is that the right of appeal for the purpose of presenting the issue to a jury must not be burdened by the imposition of onerous conditions, restrictions or regulations which would make the right practically unavailable. As to what amounts to such a forbidden restriction it has been held that the constitutional provision is not violated by a requirement of the payment of costs before the entry of an appeal in order to obtain a jury trial: McDonald v. Schell, 6 S. & R. 239; nor by a requirement

of giving bail for the payment of costs accrued and to accrue or for the performance of some other duty: Haines v. Levin, 51 Pa. 412; Commonwealth for use, v. McCann & Co., 174 Pa. 19, 34 A. 299; nor by a requirement of furnishing security for the prosecution of the appeal and satisfaction of the final judgment: Capital Traction Co. v. Hof, 174 U. S. 1, 23, 43-45; [footnote omitted] nor by a requirement of the payment of a jury fee in advance of trial: Gottschall v. Campbell, 234 Pa. 347, 361, 83 A. 286, 291."

Once a petitioner who has complied with the Act of 1956 is denied leave by a court of common pleas to appeal a judgment for a sum less than $100 entered against him by a justice of the peace, the question of the constitutionality of the Act will then be directly involved and can be brought here on appeal by an interested party. The fact that the appellant has followed the procedure prescribed by the challenged statute will not preclude him on appeal from questioning the Act's constitutionality. *O'Hara's Appeal*, 389 Pa. 35, 131 A. 2d 587; *Schmalz v. Buckingham Township*, 389 Pa. 295, 132 A. 2d 233; *Medinger Appeal*, 377 Pa. 217, 104 A. 2d 118; *Taylor v. Moore*, 303 Pa. 469, 154 A. 799. Inasmuch as that question is not now properly before us, nothing we have said herein is to be taken, even impliedly, as an expression with respect to the constitutionality of the Act of 1956.

Judgment vacated and complaint dismissed.

---

DISSENTING OPINION BY MR. JUSTICE BELL:

One of the Constitutionally guaranteed rights which the American people highly cherish is the absolute right of trial by jury. The Act of May 17, 1956 gives a defendant a right to appeal from a judgment of a magistrate or a justice of the peace (where the judgment does not exceed $100, excluding costs) *only* if his appeal is *"specially"* allowed" by the Court of Common Pleas. The Act was not intended by the Legisla-

ture as a mere idle gesture nor was it a frivolous attempt to needlessly increase a Judge's work or impose upon him additional and unnecessary clerical duties. It was, we repeat, an obviously transparent attempt to limit the Constitutional right of trial by jury by giving to the Court of Common Pleas the right, in its absolute and uncontrolled *discretion*, to allow or refuse a jury trial to certain designated persons. This Act is clearly unconstitutional.

When the Court's clerk, undoubtedly acting under the orders of the Court,* refused to accept for filing, defendant Booz's appeal from the judgment entered against him by a justice of the peace in the sum of $98, Booz, in my opinion, specifically and properly raised the Constitutionality of this Act, and is entitled to have this question specifically decided at this time by this Court. Moreover, in these days of congested Court calendars and long delays suffered by litigants, Courts should, whenever reasonably possible, expedite or end litigation, instead of requiring additional time-consuming and costly litigation.

I would reverse the judgment which the lower Court entered for defendant.

---

* Courts take judicial knowledge of many things. If there is one thing which a Judge can certainly take judicial knowledge of, it is that if his clerk makes a mistake or oversteps his authority or disobeys his orders, the Judge will correct it as soon as it is brought to his attention and if the circumstances warrant, will forthwith discipline the clerk.